356 F.2d 1
 Eleanor CAPPADORA, as Administratrix of the Estate of Agnes
Penzner, deceased, and as General Guardian of the person,
and property of Susan Jonica Penzner and Penny Dawn Penzner,
infants, Plaintiff-Appellant,
v.
Anthony J. CELEBREZZE, Secretary of Health, Education and
Welfare, Defendant-Appellee.
 No. 17, Docket 29647.
 United States Court of Appeals Second Circuit.
 Submitted Oct. 18, 1965.
Decided Jan. 28, 1966.
 
 Barry, Treanor, Shandell & Zachary, New York City (Edward A. Shandell, Roger P. McTiernan, New York City, of counsel), for plaintiff-appellant.
 John W. Douglas, Asst. Atty. Gen., Joseph P. Hoey, U.S. Atty., Morton Hollander, Max Wild, Washington, D.C., Attorneys, for defendant-appellee.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 This action, by the administratrix of the estate of Agnes Penzner and the guardian of her children, was brought in the District Court for the Eastern District of New York under the Social Security Act, 42 U.S.C. 405(g), to review a decision of the Secretary of Health, Education and Welfare refusing to reconsider or reopen a 1954 disallowance of a claim for mother's and children's insurance benefits. From an order granting the Secretary's motion for summary judgment, the plaintiff appeals.
 
 
 2
 After the death of Lou Penzner on December 15, 1953, Agnes filed with the Social Security Administration a claim for mother's and children's insurance benefits, 42 U.S.C. 402(d) and (g). The application stated that Lou and Agnes had been married by a justice of the peace in Reno, Nevada, on August 1, 1938, and had remained married until his death; that although Lou had been previously wedded to Esther Penzner, this marriage was terminated by a divorce in Brooklyn, New York, on April 30, 1946; and that two children had been born to Lou and Agnes on December 29, 1942, and May 8, 1946. Despite requests for supporting evidence from the Administration, Agnes failed to produce proof of her own marriage or of Lou's divorce from Esther, and no birth certificates of the children were presented. After filing her application, Agnes changed her story and claimed that Esther's divorce had taken place in Reno and occurred prior to her own marriage. However, a check of the records there from August 1937 through April 1954 disclosed neither the divorce nor the marriage, and there likewise was no evidence of a divorce in Brooklyn.
 
 
 3
 On June 11, 1954, the Bureau of Old-Age and Survivors Insurance wrote Agnes that her claim was disabllowed for lack of proof; that if she did not agree with that determination, she might request reconsideration or a hearing before a referee; that any such request 'should be made promptly, and must be filed within 6 months'; and that if she had any questions, she should get in touch with the district office of the Administration. In October 1954, Agnes appeared at the Brooklyn district office and in November a Mr. Carlson, a friend of hers, telephoned. Both were informed of the proofs needed to support the claim but no evidence was submitted and no written request for reconsideration or a hearing was filed. Nothing more was heard until October 3, 1962, when, after Agnes' death, her administratrix and guardian of the children, having filed an application for children's benefits on the earnings record of Agnes, stated that she wished to 'appeal' the adverse 1954 determination with respect to Lou and to have a hearing to set it aside. In substance her application was based on the contention that because of the Administration's failure to make clear to Agnes that a request for reconsideration or a hearing had to be in writing, the oral communications of October and November 1954 indicated of dissatisfaction with the determination and should be deemed a timely petition to that end. The application can be considered in effect an appeal to the Secretary to grant either a mandatory hearing on the merits under 405(b), see fn. 2, or a discretionary reopening of the 1954 determination under the Administration's regulations.[1]
 
 
 4
 In August 1963, the Administration, after due notice, held a hearing on the question whether there was a basis for giving further consideration to Agnes' claim. The Hearing Examiner found there was not, the Appeals Council denied a request for review, and this action was commenced in the district court.
 
 I.
 
 5
 We meet at the outset the Secretary's contention, rejected somewhat elliptically by Judge Dooling, that the court was without jurisdiction to entertain the suit. With respect to judicial review of the Secretary's decisions, the Social Security Act, 42 U.S.C. 405, provides:
 
 
 6
 (g) Review.
 
 
 7
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * *
 
 
 8
 (h) Finality of Secretary's decision.
 
 
 9
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided.[2] The Secretary argues that the phrase 'final decision * * * after a hearing' in 405(g) refers to a determination of the merits of a claim after a hearing required by 405(b), see fn. 2; that the provision of 405(g) for judicial review does not apply to a decision declining to reconsider or to reopen a prior determination, made in this case 'after a hearing' only because the Secretary in his discretion chose to adopt that procedure; and that hence review is precluded by 405(h).
 
 
 10
 On a strictly literal reading, 405(g) could be interpreted as applying to any final decision of the Secretary that was handed down after a hearing, albeit a hearing not required by the statute. Such an interpretation, however, would be unnatural and unsound, and scarcely consistent with the wise counsel to reject 'the tyranny of literalness' and remember that 'a restrictive meaning for what appear to be plain words may be indicated by the Act as a whole.' United States v. Witkovich, 353 U.S. 194, 199, 77 S.Ct. 779, 782, 1 L.Ed.2d 765 (1957). In enacting the Social Security Act, Congress recognized that the agency established to carry out such a vast scheme of public insurance would be confronted with a volume of applications probably unparalleled in federal administration;[3] it must have assumed also that the interests of the agency and the claimant would in most cases coincide and that the Social Security Administration would be as concerned as the applicant in the payment of a proper claim. Accordingly, in addition to wide-ranging powers suitable to effective achievement of the assigned task, the agency was authorized to make an initial determination of each claim ex parte and, in contrast to the many requirements of notice and hearing in the usual regulatory statute, was compelled to hold a hearing in only one instance-- where an adverse ex parte determination had been made and timely request for a hearing was filed, 42 U.S.C. 405(b). In this context the reasonable reading of 405(g) is that it was intended to apply to a final decision rendered after a hearing thus made mandatory, not to a decision which could lawfully have been made without any hearing at all and in that event plainly would not have come under the terms of the section. No sufficient reason appears why the Congress that adopted the Social Security Act would have wished 405(g) to apply when the agency gave an applicant the benefit of a hearing and an administrative appeal not required by the statute, but not when it had done less to assure a fair disposition; the only possible basis that occurs to us, the presence of a record in the former case, does not seem enough. Indeed, the broader reading could operate adversely to claimants generally since if a nonmandatory hearing would entail judicial review not otherwise available, this might deter the agency from giving a procedural benefit which the statute does not demand.
 
 
 11
 That, however, is not the end of the road; we must also consider whether, despite lack of authority for judicial review in the Social Security Act, such power was granted by 10 of the APA, 5 U.S.C. 1009, providing that:
 
 
 12
 Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion-- (a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof. (c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. (e) Scope of review.
 
 
 13
 So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; * * * (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law.
 
 
 14
 We have no doubt that to the extent the plaintiff's application can be considered a request for a hearing on the merits required by 405(b) of the Social Security Act, judicial review of the agency denial is authorized by the APA. To be sure, a wrongful denial of a hearing on the merits would not fall within the terms of 405(g). But turning to 10 of the APA, we think it would be wholly unreasonable to read 405(g) and (h) to 'preclude' review of an unlawful refusal of an initial hearing on the merits for which Congress provided and which, if held, would result in an order reviewable under the statute; and such a decision not only was not 'committed to agency discretion' but was taken out of its hands by the statutory requirement that a hearing be granted upon timely and sufficient request.
 
 
 15
 A closer question is whether, apart from any claim of denial of a hearing required by statute, there is jurisdiction under the APA to review a decision not to reopen what had become a final and binding determination. Although it could be argued that the second sentence of 405(h) of the Social Security Act is a statutory preclusion of such review, the more reasonable construction is that this simply forbids attempts to review final decisions on the merits by any route other than that provided in 405(g). The question thus is whether the Act 'so far' commits decision to reopen to agency discretion that a refusal would not be open to review even in case of abuse.
 
 
 16
 The fact that reopening is a matter of agency discretion to a considerable extent, see 20 C.F.R. 404.957 (1965), does not lead inevitably to a conclusion that such an exercise of administrative power is wholly immune from judicial examination; 10(e) of the APA expressly authorizes the courts to set aside any administrative decision constituting an abuse of discretion. The question is whether the Secretary in deciding not to reopen enjoys absolute discretionwhether such a decision is totally comitted to the judgment of the agency because of the practical requirements of the task to be performed, absence of available standards against which to measure the administrative action, or even the fact that no useful purpose could be served by judicial review. In this instance, review may seem unnecessary because of the benevolent role of the Social Security Administration and impracticable because of the volume of the agency's business, see fn. 3. On the other hand, a review of refusals to reopen, necessarily limited to abuse of discretion, would impose a relatively slight burden on the agency and the courts; a motion for summary judgment based on the administrative record is all that would be needed in the overwhelming bulk of cases. Moreover, being significantly limited in scope in order to respect the discretion vested in the agency, review of a refusal to reopen is not inconsistent with the scheme of the Social Security Act. The rule-making power conferred by the statute is not unlimited; rules and procedures established by the Secretary, in addition to being 'not inconsistent' with the Act, must be 'necessary and appropriate' for carrying out its purposes. 42 U.S.C. 405(a). And once appropriate rules have been established, the discretion conferred in day to day administration cannot have been assumed to extend to unreasonable deviation from such rules on an ad hoc basis at the whim of the Administration. In this context, we do not believe that Congress would have wished to close the doors of the courts to a plaintiff whose claim for social security benefits was denied because of an unreasonable or inappropriate agency rule on reopening or because of a truly arbitrary administrative decision, e.g., that reopening would never be granted to Brooklynites. Absent any evidence to the contrary, Congress may rather be presumed to have intended that the courts should fulfill their traditional role of defining and maintaining the proper bounds of administrative discretion and safeguarding the rights of the individual. See 4 Davis, Administrative Law, Treatise 28.21 (1965 pocket part, p. 31); Jaffe, Judicial Control of Administrative Action 372 (1965).
 
 
 17
 Out conclusion is not inconsistent with the case law under the Social Security Act. Langford v. Flemming, 276 F.2d 215 (5 Cir. 1960), holding reviewable a determination by the agency with respect to good cause for delay in requesting administrative appeal, which also did not fall within the latter of the Social Security Act 405(g), gives us some support. And Hobby v. Hodges, 215 F.2d 754 (10 Cir. 1954), and Filice v. Celebrezze, 319 F.2d 443 (9 Cir. 1963), though indeed looking somewhat the other way, directed discussion almost exclusively to the availability of review under the Social Security Act, one without mentioning and the other without analyzing the impact of 10 of the APA. Recognizing the lack of authoritative precedent under the Social Security Act, the Government relies heavily on SEC v. Louisiana Pub. Serv. Comm., 353 U.S. 368, 77 S.Ct. 855, 1 L.Ed.2d 897 (1957), which held unreviewable a decision not to reopen a divestment order under the Public Utility Holding Company Act 11(b), 15 U.S.C. 79k(b), even though the revocation or modification of such an order was expressly made reviewable. See Filice v. Celebrezze, supra. But that case lies in a wholly different area of administration with disparate considerations governing the proper relationship between the agency and the courts, the original decision had been made after hearing and full consideration, and abuse of discretion had not been claimed. Moreover, any attempt to construe such a summary opinion as laying down a universal negative barring review of refusals to reopen previous decisions would have to take account of the contrary implication of Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), reversing, per curiam, 308 F.2d 347 (1962), in which the Ninth Circuit had held a refusal to reopen a deportation proceeding was not reviewable as a final order of deportation within 8 U.S.C. 1105a. See Foti v. Immigration and Naturalization Service, 375 U.S. 217, 231 n. 18, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). While it can by no means be said that the Louisiana Public Service decision is apposite only to refusals to reopen under the Public Utility Holding Company Act, we think that a refusal by the Social Security Administration to reopen a denial of benefits differs sufficiently that we may and should hold it to be reviewable under 10 of the APA for abuse of discretion.
 
 II.
 
 18
 As often happens, the merits are more easily determined than the court's jurisdiction to consider them.
 
 
 19
 With respect to Agnes' right to a hearing under 405(b) of the Social Security Act, the requisite written request would have been timely if made prior to February 1, 1957.[4] Although no such request was filed, plaintiff contends that since the notice of disallowance failed to state that the request must be in writing, the oral communications of October and November 1954 should be considered sufficient to invoke her statutory right. But the notice did state that the request had to be 'filed' with the district office,-- language that most people would have understood as requiring a writing. Moreover, the Hearing Examiner justifiably found that the communications were simply preliminary inquiries as to necessary proofs and did not constitute even an oral request for a hearing. We thus do not have to decide whether if the notice had failed to give any indication that a request for a hearing had to be in writing and an oral application had been made, the claim could be defeated on the theory that the applicant was chargeable with knowledge of the regulations. As for possible extension of the time for filing the request, no good cause has been shown that would excuse the eight-year delay in insisting upon a hearing.
 
 
 20
 When the plaintiff's application, thus untimely in seeking reconsideration or a hearing, is considered as a request for a reopening under 20 C.F.R. 404.957, we find no abuse of discretion in its denial. The application was filed more than four years after the initial determination and thus out of time under the applicable regulation, see fn. 1. Moreover, no good cause for reopening was shown.[5] The closest the plaintiff came to showing this is that the Social Security Administration, taking heed of Polotti v. Flemming, 277 F.2d 864 (2 Cir. 1960), has modified its policy so as to permit, under certain conditions, the payment of benefits to children of bigamous New York ceremonial marriages or of some attempted common law marriages. But, quite apart from the rule of 404.966 rejecting as 'good cause' a change of legal interpretation or administrative ruling, see fn. 5-- the application or validity of which we need not determine-- the record here did not require a finding of such a marriage.
 
 
 21
 Affirmed.
 
 
 
 [1]
 The Social Security Regulations, which are a model of what regulations addressed mostly to laymen-- or even to lawyers-- ought not to be, make this distinction, although in somewhat murky fashion. Contrast 20 C.F.R. 404.909-11.917-18, .953-54 (1965), providing that request for reconsideration or a hearing after an initial determination must be filed in writing within six months of notice except as the period is extended on written petition for good cause shown, with 404.957 which says that an initial or reconsidered determination 'may be reopened' (a) within twelve months from the date of the notice of the initial determination, or (b) after twelve months but within four years upon a finding of good cause, or (c) at any time for any of eight reasons none of which is applicable here. The murk which surely must befog a layman and to some extent beclouds us, is whether the 'good cause' provision of the former set of regulations would permit escape from the longer but absolute time limitation of the section on reopening. Another source of difficulty is that 'good cause' sometimes seems to refer to excuse for delay and sometimes to a reason for reversal
 
 
 [2]
 Other relevant rpovisions of 42 U.S.C. 405 are:
 (a) The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.
 (b) Findings of fact; decisions; review; hearings.
 The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual * * * he shall give such applicant * * * reasonable notice and opportunity for a hearing with respect to such decisions, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision. Any such request with respect to such a decision must be filed within such period after such decision as may be prescribed in regulations of the Secretary, except that the period so prescribed may not be less than six months after notice of such decision is mailed to the individual making such request. The Secretary is further authorized, on his own motion, to hold such hearings and to conduct such investigations and other proceedings as he may deem necessary or proper for the administration of this subchapter.
 
 
 [3]
 'During 1959 the average number of claims of all kinds adjudicated per month by the Bureau of Old-Age and Survivors Insurance was 298,500; the average number of such claims disallowed per month was 37,500; approximately 1,450 appeal hearings were held each month; 530 petitions for review were filed in the United States District Courts.' Gellhorn & Byse, Administrative Law: Cases and Comments 661-662 fn. 36 (4th ed. 1960)
 
 
 [4]
 As the social security regulations stood in 1954, a party dissatisfied with an initial determination who wished to request reconsideration or a hearing was required to file a written application within six months after notice of the determination, save as that period was extended upon written request and for good cause shown. 20 C.F.R. 403.708, .709, 711(a) (1949). The six month limitation, however, was held invalid under the then broad provision in 42 U.S.C. 405(b) that a hearing had to be granted 'whenever requested.' Hobby v. Hodges, 215 F.2d 754 (10 Cir. 1954). Congress reacted by amending the section to its present form, requiring a hearing 'upon request' and authorizing the Secretary to prescribe a period to not less than six months within which a request must be filed; it provided also that the period in which any individual to whom notice had theretofore been mailed could seek reconsideration or hearing should not terminate less than six months from August 1, 1956, the date of the amendment. 70 Stat. 831
 
 
 [5]
 'Good cause' for reopening is specified in 404.958 as new and material evidence, clerical error in the computation of benefits, and error on the face of the evidence on which the decision is based-- but, according to 404.966 which is tucked away two pages off, good cause 'shall be deemed not to exist where the sole basis for reopening * * * is a change of legal interpretation or administrative ruling upon which such determination or decision was made.'