**Theodora GIOVE, on behalf of Joseph Giove (Deceased)**

v.

**Caspar WEINBERGER, Secretary, Department of Health, Education and Welfare, Individually in his official capacity.**

**Civ. A. No. 73-358-M.**

United States District Court, D. Maryland.
July 29, 1974.

Dennis M. Sweeney and J. Kenneth Donnelly, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., and Gerard P. Martin, Asst. U. S. Atty., and James C. Pyles, Dept. of Health, Ed. and Welfare, Baltimore, Md., for defendant.

*Memorandum Opinion and Order*

JAMES R. MILLER, Jr., District Judge.

Plaintiff, the widow of Joseph Giove, has filed a complaint in this court challenging the determination of the Social Security Administration that the hospital care of her deceased husband after June 9, 1971, was "custodial" and thus specifically excluded from coverage under the "Medicare Act" by virtue of Title XVIII, § 1862(a)(9) of the Social Security Act, 42 U.S.C. § 1395y(a)(9). The amount of the hospital bill in question is agreed to be $878.35.

The defendant has moved to dismiss on the ground that the amount in controversy is less than the $1,000 jurisdictional requirement of § 1869(b) of the Act, 42 U.S.C. § 1395ff(b)(2).

In 1972, Congress generally amended the conditions under which a dissatisfied individual would be entitled to a hearing by the Secretary of Health, Education and Welfare (H.E.W.) and to judicial review of the final decision of the Secretary. Pub.L. 92–603, Title II, § 299o (Oct. 30, 1972), 86 Stat. 1464, 42 U.S.C. § 1395ff. In relevant part this provision is as follows:

"§ 1395ff. Determinations; appeals

"(a) The determination of whether an individual is entitled to benefits under part A or part B, and the determination of the amount of benefits under part A, shall be made by the Secretary in accordance with regulations prescribed by him.

"(b)(1) Any individual dissatisfied with any determination under subsection (a) . . . as to—

"(A) whether he meets the conditions of section 426 or 426a of this title, or

"(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i—2 of this title or section 1819, or

"(C) the amount of benefits under part A (including a determination where such amount is determined to be zero)

shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

"(2) Notwithstanding the provisions of subparagraph (C) of paragraph (1) of this subsection, a hearing shall not be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $100; nor shall judicial re-

view be available to an individual by reason of such subparagraph (C) if the amount in controversy is less than $1,000."

The amended § 1395ff applies in the instant case because this action was not filed until April 13, 1973, subsequent to the date of passage of the amendment. Pub.L. 92–603, § 299*O*(b).

"Part A," referred to in § 1395ff, is the designation for that section of the Medicare Act establishing the broad general framework of eligibility for and operation of a basic program of hospital insurance benefits for the aged and disabled. 42 U.S.C. §§ 1395c–1395i–2. "Part B," referred to in § 1395ff, is the designation for that section of the Medicare Act establishing the broad general framework of eligibility for and operation of a program of supplemental medical insurance for qualified aged and disabled persons. 42 U.S.C. §§ 1395j–1395w. "Part C," not directly referred to in § 1395ff, is the designation for that section of the Medicare Act which contains miscellaneous provisions of the Act. 42 U.S.C. §§ 1395x–1395pp.

The pre-1972 statute as it provided for judicial review stated:

"§ 1395ff

"(b) . . . in the case of a determination as to *entitlement* or as to amount of benefits where the amount in controversy is $1000 or more, to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) . . . ." (Emphasis supplied).

In her amended complaint, plaintiff alleged jurisdiction alternatively under 42 U.S.C. § 1395ff(b), 42 U.S.C. § 405(g), 5 U.S.C. §§ 701–704, 28 U.S.C. § 1361, and 28 U.S.C. §§ 2201–2202.

I

The first theory of jurisdiction rests upon the premise that the Secretary's action in denying the claim was based upon a finding that the decedent did not meet the conditions of 42 U.S.C. § 426. If true, the Secretary's action would clearly be subject to judicial review under 42 U.S.C. § 1395ff(b) (1)(A).

Section 426(a) states, in essence, that individuals who have reached age 65 and are entitled to receive Social Security retirement benefits (both conditions were concededly met here) are entitled to Medicare benefits for as long as they are entitled to retirement benefits. However, notes plaintiff, § 426(c) provides that, for the purposes of subsection (a), " . . . entitlement of an individual to hospital insurance benefits for a month shall consist of entitlement to have payments made under, and subject to the limitations in, Part A of subchapter XVIII . . . during such month. . . . " Plaintiff argues that this reference to the "limitations" in Part A is a *further* condition of entitlement which *adds* something to § 426(a) and incorporates into § 426 all the limitations set out in Part A. Therefore, concludes plaintiff, a determination that the last 13 days of Mr. Giove's hospital stay did not constitute "covered" care was, in effect, a decision that Mr. Giove did not meet "the conditions of" § 426.

By this argument plaintiff has read too much into § 426(c). No case law supporting plaintiff's view of § 426 is cited, nor could this court find any. Section 426(c) on its face, only *defines* entitlement under § 426(a); it does not provide new conditions. Section 426 does *not* purport to *lay down* all the conditions for *payment* of benefits, only the conditions which must be met for *entitlement* to benefits. "Entitlement" in § 426, unlike its use in the previous § 1395ff, (*see* Ridgely v. Sec'y of Dept. of H.E.W., 475 F.2d 1222 (4th Cir. 1973); Cardno v. Finch, 311 F.Supp. 251 (E.D. La.1970) ), *is* used as a term of the art. As such, "entitlement" is a necessary, but not sufficient, prerequisite to the receipt of benefits under Part A. Nothing in the statute itself would lead one to conclude that the mere reference to the "limitations" of Part A was meant to be equivalent to an incorporation of

those limitations. If anything, the language in § 426(c) " . . . and subject to the limitations in . . ." Part A indicates that *these limitations* are in addition to entitlement (which is a *monthly status*) and that the limitations under Part A are mentioned only to make the dichotomy between *entitlement to* and *receipt of* benefits more clear. One could be "entitled" to such benefits for years and never receive a cent if he were never hospitalized.

There is convincing reason to believe, then, that the reference to § 426 in § 1395ff(b)(1)(A) is only intended to cover contests over the two conditions explicitly set forth in § 426(a). If it were otherwise (e.g. if the limitations of Part A were also conditions of § 426), there would have been no reason for Congress to have enacted § 1395ff(b)(1)(C) since that subparagraph would have been rendered redundant. To contend that the limitations of Part A are incorporated conditions of § 426 is to suggest an unduly strained interpretation of the statute. Jurisdiction under § 1395ff is not properly invoked under this theory.

## II

■ Plaintiff's next contention is that § 1395ff does not in terms preclude judicial review of a determination under Part C by defining the conditions of judicial review of determinations under Part A and Part B. The argument is that the finding of the administrative law judge (A.L.J.) for the Secretary that the disputed services to Mr. Giove constituted "custodial care" under § 1395y(a)(9) was a determination of a matter under Part C, judicial review of which is not precluded under § 1395ff, and, therefore, judicial review is available under 42 U.S.C. § 405(g) and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (A.P.A.).

It is true that the decision of the A.L.J. did include the factual finding that the services in the period at issue were custodial in nature and excluded from coverage by § 1395y(a)(9). But that finding alone would not have been a *final decision* of the Secretary and, as such, would not have been subject to judicial review under any theory. Obviously the "exclusion from coverage" finding was only a preliminary to the actual decision of the A.L.J., that plaintiff was not to receive benefits under Part A for services rendered during the period in issue. Again, if Part C matters were sufficiently final decisions to merit judicial review, § 1395ff(b)(1) (C) would be rendered substantially nugatory, since almost every decision as to Part A benefits entails some dispute as to some Part C matter.

Here, the A.L.J.'s decision concluded with a statement as to whether or not Part A benefits would be paid. *That* is the final decision; the preliminary decision under § 1395y(a)(9) is not, *per se* reviewable under § 405, the A.P.A., or any other jurisdictional grant.

## III

■ Plaintiff next suggests that jurisdiction exists pursuant to 42 U.S.C. § 405(g), which provides, in pertinent part:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . ."

Plaintiff concedes that review under § 405(g) is usually sought in conjunction with old age, survivors and disability claims (since § 405(g) was enacted as part of Title II dealing with such claims), but notes that " . . . there is nothing in the Act expressly limiting . . . [§ 405(g)'s] . . . coverage to Title II claims." The real crux of the matter, though, is that there is nothing in the Act expressly extending § 405(g)'s coverage to Title XVIII (the

Medicare provisions) of the Act. This absence is especially significant in light of the fact that § 405(g) *is* made applicable to *some* Medicare disputes by § 1395ff(b)(1) and that subsections (a), (d), (e), (f), (h), (i), (j), (k), and (*l*) [but *not* (g)] of § 405 *are* specifically made applicable to Title XVIII .by § 1395ii. Obviously, Congress felt it necessary to make certain provisions of Title II expressly applicable to Title XVIII. Otherwise § 1395ii would be wholly a nullity. Therefore, since Congress could have made § 405(g) generally applicable to Title XVIII, but, in § 1395ff, made it applicable to Title XVIII only in specifically enumerated instances, the logical inference is that, except as to those instances, Congress did *not* intend § 405(g), its broad language notwithstanding, to be applicable to Title XVIII. The plaintiff cites no cases in which a claimant has relied exclusively upon § 405(g) to obtain judicial review of a final decision of the Secretary in a Medicare matter. Nor is the fact that Title II now contains 42 U.S.C. § 426 which expressly deals with, and refers to, benefits under Title XVIII, a particularly convincing indication that § 405(g), another provision of Title II, is to be read into other Titles of the Social Security Act. Finally, the presumption of judicial reviewability discussed in Aquavella v. Richardson, 437 F.2d 397, 401 (2d Cir. 1971), is a presumption arising under the A.P.A., not the Social Security Act. As such that presumption is of no aid to plaintiff's argument that subject matter jurisdiction is conferred upon this court by § 405(g).

### IV

■ The next contention urged by plaintiff is that jurisdiction arises under the A.P.A., 5 U.S.C. §§ 701–704. It is not necessary for this court to decide whether the A.P.A. itself can provide a jurisdictional base, a question about which some doubt exists. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.

Ed.2d 136 (1971) (implying that A.P.A. is an independent jurisdictional base); Citizens Comm. for Hudson Valley v. Volpe, 302 F.Supp. 1083, 1091 (S.D.N. Y.1969), aff'd, 425 F.2d 97 (2d Cir. 1970), cert. den., Parker v. Citizens Comm. for Hudson Valley, 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970) (outright saying it is); *contra,* Arizona State Dept. of Public Welfare v. H.E.W., 449 F.2d 456, 464 (9th Cir. 1971); Mills v. Richardson, 464 F.2d 995, 1001, note 9 (2d Cir. 1972).

The Administrative Procedure Act grants a right to judicial review in the following sections:

"§ 701. Application; definitions

"(a) This chapter applies, according to the provisions thereof, except to the extent that—

"(1) statutes preclude judicial review; or

"(2) agency action is committed to agency discretion by law."

"§ 702. Right of review

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

"§ 704. Actions reviewable

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. . . ."

The leading case on judicial review under the A.P.A. is Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), considering a challenge to a regulation of the Federal Drug Administration. *Abbott,* 387 U.S. at 140, 87 S.Ct. at 1511, states that the A.P.A. ". . . embodies the basic presumption of judicial review. . ." to one aggrieved by agency action. See also H.R.Rep. No. 1980, 79th Cong., 2d Sess., 41 (1946):

"To preclude judicial review under this bill a statute, if not specific in

withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specifically by statute for judicial review is certainly no evidence of intent to withhold review."

In Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971), plaintiffs were *providers of services* whose payments from H.E.W. under Title XVIII were suspended without a hearing. The Secretary argued therein that such a suspension was not judicially reviewable because Title XVIII *expressly* provides only two instances of judicial review of a decision concerning a provider: *a.* termination and *b.* lack of qualification to be a provider. Since suspension (as opposed to termination) was neither expressly made reviewable nor expressly or impliedly precluded from review (despite the language of § 405(h) ), the Court of Appeals for the Second Circuit applied the presumption of reviewability, saying:

"[W]here the [Social Security] Act does not provide such procedures, section 405(h) does not preclude review. . . . Where, as here, the review procedures of the Medicare Act do not apply, they do not limit 'nonstatutory' review." *Id.*, 437 F.2d at 402.

Similarly, in Kingsbrook Jewish Medical Center v. Richardson, 486 F.2d 663 (2d Cir. 1973), the Secretary's refusal to make a retroactive corrective adjustment of a previous inaccurate reimbursement was held judicially reviewable since not expressly or impliedly precluded by the Medicare Act. Again § 405(h) was construed to apply only where a litigant sought to *bypass* the judicial review procedures provided by the Act. Section 405(h), which is expressly made applicable to Title XVIII, provides:

"The findings and decisions of the Secretary *after a hearing* shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary

shall be reviewed by any person, tribunal, or governmental agency except as herein provided. . . ." (Emphasis supplied).

In *Aquavella* and *Kingsbrook*, no hearing was held while in the instant case there was a hearing.

In Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966), it was held by Judge Friendly that the Administration's refusal to reopen a denial of benefits and to hold a hearing on the merits of the claim was reviewable under the A.P.A. In *Cappadora*, plaintiff had a hearing, but not a hearing *on the merits* as was held here. Judge Friendly noted:

"To be sure, a wrongful denial of a hearing on the merits would *not* fall within the terms of § 405(g). But turning to § 10 of the APA, we think it would be wholly unreasonable to read §§ 405(g) and (h) to 'preclude' review of an unlawful refusal of an initial hearing on the merits for which Congress provided, and which, if held, would result in an order reviewable under the statute. . . ." (Emphasis supplied). *Id.*, 356 F.2d at 5.

Section 405(h) was construed as simply forbidding ". . . attempts to review final decisions *on the merits* by any route other than that provided in § 405(g)." (Emphasis supplied). *Id.*, 356 F.2d at 5. The point is that here, unlike *Cappadora, Aquavella,* and *Kingsbrook,* the A.P.A. is invoked as a basis for jurisdiction where there has been a hearing and final decision on the merits by the Secretary. Likewise, of the other decisions cited by plaintiff, in none was the court asked to review a final decision after a hearing on the merits: Maddox v. Richardson, 464 F.2d 617 (6th Cir. 1972) (refusal to reopen); Davis v. Richardson, 460 F.2d 772 (3rd Cir. 1972) (refusal to reopen); Woods v. Richardson, 465 F.2d 739 (6th Cir. 1972) (refusal to reopen); Cancel v. Sec'y of H.E.W., 355 F.Supp. 835 (D.P. R.1973) (dismissal due to abandonment).

Plaintiff alleges that, as found in *Aquavella,* the Act is "silent" as to judicial review on the type of adverse decision rendered against her. She argues that review is not explicitly precluded by the Act nor is there "clear and convincing evidence" of a legislative intent against judicial review. *Abbott Laboratories, supra,* 387 U.S. at 141, 87 S.Ct. 1507. Judicial review of administrative action is the rule and non-reviewability is an exception which must be clearly demonstrated. Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

Plaintiff admits that 42 U.S.C. § 1395ff(b)(2) specifically precludes judicial review concerning any determination as to the amount of benefits under Part A where the amount in controversy is less than $1,000, but again contends that the Secretary's decision here was under Part C and not Part A. For the reasons stated above (basically that the decision on Part C matter is only preliminary to the decision on Part A benefits) this court finds plaintiff's contention untenable.

The Medicare Act expressly, or *at least* by very clear implication, precludes judicial review (statutory or "non-statutory") of the type of final decision here at issue. Such a conclusion can be supported both through § 405(h) (which *is* applicable here because there *was* a hearing *on the merits* and because an administrative procedure for a claim of this type [unlike *Aquavella* and *Kingsbrook*] is clearly set forth in the Act) and through § 1395ff(b)(2). Plaintiff has followed the administrative procedure as far as it will take her on the merits. Congress has seen fit to preclude judicial remedy even where there may be a substantive wrong. Since the United States has sovereign immunity, the maxim that "every wrong has its remedy" is inapplicable. What possible reason could Congress have had in enacting a statute providing " . . . nor shall judicial review be available to an individual by reason of . . . [his dissatisfaction with a determination as to the amount of benefits under Part A] if the amount in controversy is less than $1000" except to keep the courts from having to deal with disputes just like this one? Congress obviously did not go to the trouble of amending § 1395ff(b) to make clear that § 405(g) judicial review was not to apply to Medicare benefits disputes involving less than $1,000 and at the same time intend that judicial review jurisdiction would exist under the A.P.A. The intent of Congress seems rather clear and is reasonably (though perhaps not perfectly) manifested in the language of § 1395ff(b) and § 405(h) (made applicable to Title XVIII by § 1395ii).

### V

Plaintiff next urges that this court has subject matter jurisdiction over this claim arising under 28 U.S.C. § 1361, the Mandamus and Venue Act of 1962, which provides:

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel any officer of the United States or any agency thereof to perform a duty owed to the plaintiff."

Plaintiff alleges that the duty owed is payment to her of the amount in controversy. In this regard, plaintiff alleges that the defendant: 1) acted in an unconstitutional manner by denying her notice and hearing *before* terminating benefits; 2) acted *ultra vires* by overruling the determination of the decedent's private physician and the hospital's Utilization Review Committee that the care decedent required during his last 13 days in the hospital was not custodial; and 3) abused his discretion by deciding that the care required by the decedent during the period in question was custodial.

On behalf of the Fourth Circuit, Judge Craven has said:

"Mandamus is an ancient remedy, said to lie only to compel the fulfillment of a duty which is ministerial, plainly and positively ascertained, and

free of doubt. Prairie Band of Pottawatomie Tribe of Indians v. Udall, 355 F.2d 364, 367 (10th Cir. 1966). These traditional requirements for invoking federal mandamus were concisely stated by the Fifth Circuit in Carter v. Seamans, 411 F.2d 767 (5th Cir. 1969), at 773:

> "Generally speaking, before the writ of mandamus may properly issue three elements must coexist: (1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Burnett v. Tolson, 474 F.2d 877 (4th Cir. 1973), at 880.

Defendant urges that he has no "clear duty" to do the acts plaintiff seeks and that plaintiff has no "clear right" to the relief sought. As the Supreme Court said in Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 219, 50 S.Ct. 320, 325, 74 L.Ed. 809 (1930):

> "[W]here the duty is not thus plainly prescribed but depends upon a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus."

In urging that defendant had a constitutional duty to provide a pre-termination hearing on the merits, plaintiff must rely on an *extension* of the holding of Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970). That case held that a pre-termination hearing was required as to certain welfare benefits administered by a state. The Court noted in *Goldberg,* 397 U.S. at 262–263, 90 S.Ct. at 1018 that:

> "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' . . . and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication."

The crucial factor in *Goldberg* was that the benefits there in issue were of a continuing nature (not like a one-time insurance claim here), and, by the nature of qualifying for welfare, the recipients were *all* destitute and dependent on the benefits for life's daily essentials. If they were wrongfully denied benefits, they might literally starve or freeze while awaiting a hearing. These factors are not present here. Even when the benefits are paid, they are not paid until *after* the services are rendered and a bill submitted. As defendant states:

> "By the very nature of a Part A, Title XVIII proceeding, a determination of whether services are covered thereunder may only be made by the Secretary retroactively. Services are not covered if they constitute custodial services . . . . The services must first be furnished and can only then be assessed with respect to an individual's medical condition for a determination of whether it was medically necessary for such to be furnished as they were." (Defendant's memorandum, p. 18).

Apparently, only a Utilization Review Committee's physician members (§ 1395f(a)(7)) may make such a prospective finding that services are not medically necessary, and they are not required to hold a formal hearing by statute or regulation. Neither is there any statute or regulation requiring the Secretary to hold a pre-termination hearing, even in the case of suspension of otherwise continuing benefits such as disability benefits. In Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972), the Supreme Court refused to apply *Goldberg* to the suspension of Social Security disability benefits and remanded the case on other grounds (three justices dissenting on the ground that *Goldberg* should be applied), indicating by implication that some procedure other than a pre-termination hearing might satisfy due process. Plaintiff

has cited no case or other authority stating that defendant has the duty to grant a pre-termination hearing (assuming that such is even possible where benefits are of a noncontinuing variety) in Medicare or any other Social Security benefit cases.

Plaintiff's allegation that defendant's denial of benefits, despite certification by decedent's physician and no adverse ruling by the Utilization Review Committee, was contrary to Title XVIII is likewise unsupported by reference to any authority intimating that the Secretary is bound by the physician's determination. Contrary to plaintiff's assertion, under § 1395f(a)(3) the physician's certification is merely a necessary, but not sufficient, precondition to the payment of Medicare benefits. Furthermore, § 405(b) (also applicable to Title XVIII) requires the *Secretary*, not the decedent's physician or the Utilization Review Committee, to make findings of fact and decisions as to the merits of benefits claims. Section 405(g) under which there would be judicial review jurisdiction in a larger Medicare claim, states that "the findings of the *Secretary* as to any fact, if supported by substantial evidence, shall be conclusive. . . ." (Emphasis supplied). In disability benefits cases, it has repeatedly been held that the Secretary is not bound by the conclusions or certifications of a treating physician. Dixon v. Gardner, 406 F.2d 1035 (4th Cir. 1969); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966).

Accordingly, since plaintiff has shown no "clear duty" for the Secretary to perform any act differently than he has performed it nor any "clear right" in the plaintiff to the relief which she seeks, jurisdiction under the Mandamus Act is not properly invoked.

### VI

■ Plaintiff's amended complaint also has a jurisdictional allegation based on 28 U.S.C. §§ 2201 and 2202, relating to declaratory judgments. However, these sections are not, in and of them-

selves, grants of federal jurisdiction but only provide an additional remedy where jurisdiction exists in the court on some other jurisdictional base. Wright and Miller, Federal Practice and Procedure, § 2766, vol. 10; Anderson v. United States, 229 F.2d 675 (5th Cir. 1956); Brownell v. Ketcham Wire & Mfg. Co., 211 F.2d 121, 128 (9th Cir. 1954); Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937); Bandag, Inc. v. Saliga, 314 F.Supp. 432 (D.Md.1970); Zito v. Tesoriero, 239 F.Supp. 354 (E.D.N.Y.1965); Mims v. United States, 324 F.Supp. 489 (W.D.Va.1971). Since plaintiff has failed to make out a proper jurisdictional claim on any other ground, reference to the Declaratory Judgment Act is of no aid to her opposition to defendant's pending motion.

### *Conclusion*

For all the reasons previously set forth herein, this court finds that it has no jurisdiction to entertain this action, the amount in dispute being admittedly less than $1,000, and that defendant's motion for dismissal must be granted.

It is so ordered.