486 F.2d 663
 KINGSBROOK JEWISH MEDICAL CENTER, Plaintiff-Appellant,
v.
Elliot L. RICHARDSON, Secretary of Health, Education and
Welfare, and Associated Hospital Service of New
York (Blue Cross), Defendants-Appellees.
 No. 143, Docket 73-1552.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 20, 1973.
Decided Oct. 15, 1973.
 
 John M. Bray, Washington, D. C. (Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., Edward A. Woolley, Bernard Zucker, Malcolm A. Hoffmann, New York City, of counsel), for plaintiff-appellant.
 Harlington Wood, Jr., Asst. Atty. Gen. (Robert Morse, U. S. Atty., E. D. N. Y., Robert E. Kopp, Robert M. Feinson, Dept. of Justice, of counsel), for defendants-appellees.
 Before KAUFMAN, Chief Judge, and SMITH and MULLIGAN, Circuit Judges.
 KAUFMAN, Chief Judge:
 
 
 1
 The well-intentioned statutes enacted in the days of the Great Society are often characterized by a linguistic imprecision which inevitably breeds dispute. The Medicare Act is no exception. Fortunately, resolution here does not require us to achieve clarification at the expense of possible confusion, since the section that we ultimately interpret speaks in words of plain and common sense.
 
 
 2
 Plaintiff Kingsbrook Jewish Medical Center, a charitable organization, is a multiple facility hospital complex located in Brooklyn, New York. It has been a participating "provider of services" under the Medicare Act, 42 U.S.C. Secs. 1395-1395pp,[1] from the program's birth on July 1, 1966. From that date until December 31, 1967, Kingsbrook contends that it received inadequate reimbursement for services furnished to Medicare beneficiaries and that the Secretary of Health, Education and Welfare has admitted as much but has refused to remedy the error despite a specific statutory directive to do so. The district court, 355 F.Supp. 965, dismissed the complaint, claiming lack of power to review the Secretary's decision. Kingsbrook appeals to this Court for resolution of this conflict.
 
 
 3
 To understand the origin of the controversy before us, a brief description of the Act's framework is in order. Section 1395cc requires a "provider of services" to agree with the Secretary of Health, Education and Welfare not to charge Medicare benefit recipients directly for services provided under the Act. Rather, a provider is reimbursed by the Secretary or by certain private organizations, designated fiscal intermediaries, under contract with HEW.[2] In this case, appellee Associated Hospital Service of New York acts in that capacity and Kingsbrook receives reimbursement through Associated.
 
 
 4
 In addition to establishing the source of reimbursement, the Medicare Act prescribes the manner of payment and the method of determining the aggregate reimbursement to which a provider is entitled. Section 1395g provides that the Secretary or his designate shall make periodic reimbursement, not less often than monthly, based on unaudited interim cost reports submitted by providers and subject to adjustment following audit. The total amount to be paid to a provider pursuant to section 1395f(b) shall be "the reasonable cost" of services rendered to Medicare beneficiaries, as determined under section 1395x(v). That section in turn requires the Secretary to determine "reasonable cost" by issuing regulations establishing permissible methods of cost calculation as well as provision for "suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive."
 
 
 5
 Upon the enactment of the Act, Kingsbrook was operating two separate facilities-an acute division and a chronic division. Although one division treated a greater number of Medicare patients than the other and the divisions operated at disparate levels of per patient cost, HEW refused to accept the dual cost calculation proffered by Kingsbrook. Instead, the Secretary established a method of determining "reasonable cost" under which each provider was considered as a single unit, with reimbursement to be based on the product of the average per patient cost times the total number of patients treated by the provider.
 
 
 6
 On December 13, 1967, however, HEW reversed its position on the propriety of the dual cost calculation. The Bureau of Health Insurance, a division of the Social Security Administration, the arm of HEW responsible for establishing acceptable methods of cost determination, issued Intermediary Letter No. 295 which read, in pertinent part:
 
 
 7
 Although suitable from a certification point of view, this practice (single unit calculation) created difficulties in formulating methods for making equitable reimbursement for services rendered in each component facility of the complex. Where the cost of services rendered by each facility differs, or where there are significant differences in their various operating costs, the treating of all facilities as one entity for cost reimbursement purposes could mean an underpayment or overpayment for services rendered to beneficiaries. . . . Treating each facility as a separate cost entity, moreover, more accurately satisfies the provisions of Section 1861(v)(1) (presently codified as section 1395x(v)(1)) which stipulate that the costs with respect to individuals covered by title XVIII (Medicare) will not be borne by individuals not so covered, and vice versa. (Emphasis added)
 
 
 8
 Learning of this change in the approved method of cost calculation, Kingsbrook sought its retroactive application, as provided by section 1395x(v)(1) of the Medicare Act, to the period during which the erroneous single unit calculation had prevailed-July 1, 1966 to December 31, 1967. Two meetings were held with Bureau of Health Insurance officials and a third with an Assistant General Counsel of HEW. None proved fruitful for Kings brook, HEW's irresolute stance being prospective application only.[3]
 
 
 9
 Having exhausted existing administrative remedies,[4] Kingsbrook, on November 13, 1972, filed its complaint in the United States District Court for the Eastern District of New York alleging that the Secretary of HEW had erred in refusing to initiate a retroactive corrective adjustment of the aggregate reimbursement improperly determined under the single unit method from July 1, 1966 to December 31, 1967. Kingsbrook asked for monetary damages in the amount of $394,392 as well as injunctive relief and a declaratory judgment ordering such retroactive adjustment. Following cross-motions for summary judgment and appellees' motion to dismiss, Judge Travia dismissed the complaint on the grounds that the Medicare Act impliedly precluded judicial review of the Secretary's decision under the Administrative Procedure Act (APA), 5 U.S.C. Secs. 701-706.[5] Finding dismissal irreconcilable with our decision in Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971), we reverse.
 
 I.
 
 10
 In Aquavella, we held that a provider could obtain judicial review of the Secretary's decision to suspend reimbursement payments, although the Medicare Act did not expressly provide for judicial review of that category of decision,[6] by recourse to "nonstatutory" review under the APA. Id. at 402. Subject matter jurisdiction to entertain this claim, we found, properly rested on general federal question jurisdiction, 28 U.S.C. Sec. 1331, provided, of course, the amount in controversy exceeded $10,000. Id. at 400 n. 9. In so holding, we necessarily met and resolved the contention urged by the Secretary that section 405(h)[7] of the Social Security Act, incorporated into the Medicare Act by section 1395ii, expressly precluded judicial review of any decision by the Secretary unless such review was provided by the Medicare Act itself. After a thorough examination of the relevant legislative history as well as a prior interpretation of section 405(h) by this Court in Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966), we construed the limitations of section 405(h) to apply only where a litigant sought to by-pass the judicial review procedures provided by the Medicare Act. We clearly noted:
 
 
 11
 Where the Medicare Act establishes procedures for review of the Secretary's decision, a court may not review that decision by any other means. However, where the Act does not provide such procedures, section 405(h) does not preclude review. Aquavella, supra, 437 F.2d at 402.
 
 
 12
 In this case, all parties agree that the Medicare Act includes no express provision for judicial review of the Secretary's refusal to make a retroactive corrective adjustment of a previous, inaccurate reimbursement. Although Aquavella would seem to foreclose any argument that section 405(h) presents a barrier to "non-statutory" judicial review, the Secretary unpersuasively attempts to distinguish that decision.
 
 
 13
 Appellees contend that the jurisdictional limitation contained in the third sentence of section 405(h) was not brought to the court's attention in Aquavella.[8] Accordingly, the argument proceeds, the applicability of the jurisdictional preclusion embodied in section 405(h) is a matter of first impression and this Court, therefore, should ignore Aquavella and heed the allegedly plain statutory language. This reasoning is simply untenable. It strains credulity to suggest that this Court, squarely focusing on a statutory section containing three sentences, would overlook the third and final sentence. Moreover, it would have been fundamentally inconsistent for us to have held that while judicial review per se is not precluded by section 405(h), the whole question of review is mooted at the outset by the absence of jurisdiction. Rather, our decision in Aquavella stands for the proposition that, because of considerations of due process, all of the restraints on judicial action included in section 405(h) are inapplicable where the Medicare Act provides no procedure for judicial review. Consequently, we find jurisdiction to hear Kingsbrook's claim under 28 U.S.C. Sec. 1331.[9]
 
 
 14
 The Secretary undertakes yet another approach in an effort to circumvent the precedential impact of Aquavella. In that case, we held that the Medicare Act neither expressly nor impliedly precluded judicial review under the APA. Appellees argue, with sufficient persuasion to have convinced the district court,[10] that while Congress may not have impliedly precluded judicial review of a suspension decision, it "clearly and convincingly"[11] prohibited review of a cost determination decision. The Secretary, however, points only to section 405(h) and the identical legislative history cited in Aquavella[12] in support of his argument.
 
 
 15
 Our interpretation of the express Congressional intent conveyed in section 405(h) cannot so readily be circumvented by resorting to implied preclusion. After reviewing the Medicare Act and its legislative history, we concluded in Aquavella that except for two instances, provider eligibility and termination,[13] in which Congress had provided exclusive administrative and judicial review procedures, it was silent on the availability of judicial review of any other decisions which the Secretary might make. Congressional silence, of course, cannot overcome the presumption of reviewability of agency action under the APA. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).
 
 
 16
 That Congress, in 1972, amended the Medicare Act to establish a Provider Reimbursement Review Board and for judicial review of that Board's decisions,[14] which arguably[15] now would be the exclusive route for Kingsbrook, has little impact on a statute that previously was mute on the subject. Rather, this amendment reflects Congressional selection of one possible approach available to it in response to our interpretation of section 405(h) in Aquavella. After our decision, Congress really had three routes it could travel in dealing with judicial review of Medicare Act decisions: (1) it could continue to permit such review of decisions as prescribed by the APA for all determinations other than those governing provider eligibility and termination; (2) it could expressly prohibit judicial review of other decisions by the Secretary; (3) it could establish additional administrative and judicial review procedures which would become exclusive by operation of section 405(h). In 1972, Congress simply opted for the third alternative. Accordingly, we find no prohibition, express or implied, against judicial review of Kingsbrook's claim under the APA.
 
 
 17
 The Secretary raises one final threshold barrier to judicial review in this case-the doctrine of sovereign immunity. This obstacle can be readily surmounted, however, by recourse to our holding in Kletschka v. Driver, 411 F.2d 436, 445 (2d Cir. 1969), that "the A.P.A. constitutes a waiver of sovereign immunity concerning those claims which come within its scope." Since we have already determined that Kingsbrook's claim falls squarely within the four corners of that Act, appellees' sovereign immunity argument must fail.
 
 II.
 
 18
 Having decided that judicial review may be had under the APA, we would generally remand to the district court for further proceedings on the merits. However, since we find from a review of the record below, including the various affidavits in support of the cross-motions for summary judgment, that there are no material issues of fact in dispute,[16] at least with respect to the limited relief we deem appropriate, we consider it unnecessary to remand solely for resolution of the conflict over the proper statutory construction of the Medicare Act.
 
 
 19
 In order to decide the merits of this controversy, we must advert initially to the scope of review authorized by the APA. Since Kingsbrook's claim rests on the Secretary's alleged failure to heed a statutory requirement of the Medicare Act, the APA requires that we interpret the relevant statutory provisions and, where appropriate, "compel agency action unlawfully withheld." 5 U.S.C. Sec. 706(1).
 
 
 20
 Our attention is directed by Kingsbrook to section 1395x(v)(1) which defines the calculation of "reasonable cost" in the following terms:
 
 
 21
 The reasonable cost of any services shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs. . . . Such regulations shall . . . provide for the making of suitable retroactive corrective adjustments where, for a provider of services for any fiscal period, the aggregate reimbursement produced by the methods of determining costs proves to be either inadequate or excessive. (Emphasis added)
 
 
 22
 Although we have uncovered no legislative history to elucidate this statutory language, its plain words do not require interpretative gymnastics. Where a "method of determining costs," here the single unit method, produces an inaccurate reimbursement, as admitted in Intermediary Letter No. 295,[17] Congress has instructed the Secretary to issue regulations providing for a "retroactive corrective adjustment." We search in vain for such regulations.
 
 
 23
 The Secretary refers us to regulation 20 C.F.R. Sec. 405.454,[18] entitled "Payments to Providers." Although subpart (f) of this regulation provides for "retroactive adjustment," it is an adjustment designed solely
 
 
 24
 to bring the interim payments made to the provider during the period into agreement with the reimbursable amounts payable to the provider for the services rendered to program beneficiaries during that period. (Emphasis added)
 
 
 25
 Clearly, this is not the "retroactive corrective adjustment" required by section 1395x(v)(1) where "the reimbursable amount payable to the provider," (20 C.F.R. Sec. 405.454(f)) as calculated by "the methods of determining costs," (42 U.S.C. Sec. 1395x(v)(1) proves inaccurate. Rather, the Medicare Act incorporates a twofold adjustment process: (1) to rectify errors produced by the interim payment procedure; (2) to correct flaws in the aggregate reimbursement to which a provider is entitled due to an erroneous method of determining reimbursable cost. The regulation cited by the Secretary implements the former but not the latter.
 
 
 26
 This distinction between methods of payment and methods of determining costs is highlighted by the drafters' use of different sections of the Act, section 1395g and section 1395x(v)(1) respectively, to describe each.[19] Section 1395g authorizes periodic reimbursement "prior to audit or settlement by the General Accounting Office . . . with necessary adjustments on account of previously made overpayments or underpayments. . . ." This statutory language delineating an interim payment procedure, necessarily based on cost estimates, must be contrasted with the reference in section 1395x(v)(1) to "methods of determining costs" to be established for calculation of the annual and, if accurate, final measure of reimbursable costs incurred by the provider. With this descriptive duality in mind, we believe that the corrective adjustments contemplated under section 1395g, required to remedy provider errors revealed after audit, are of a kind different from the corrective adjustments mandated by section 1395x(v)(1), designed to rectify mistakes made by HEW in formulating a particular method of determining cost.[20]
 
 
 27
 The Secretary also urges us to consider the hardship that would prevail if all reimbursements remained forever subject to adjustment. We recognize that this policy consideration may dictate a regulation which limits the extent of retroactivity. Accordingly, rather than establish de novo the precise period of appropriate retroactivity, we reverse the order below and remand to the district court with instructions to grant Kingsbrook's motion for summary judgment,[21] to the extent of directing the Secretary of Health, Education and Welfare to promulgate regulations consistent with the interpretation of section 1395x(v)(1) that we have announced. We express no opinion as to the amount of additional reimbursement, if any, to which Kingsbrook may be entitled under these regulations.
 
 
 
 [1]
 By amendment to the Medicare Act in 1972, Congress added Secs. 1395mm-1395pp and revised other sections of the Act as well. Since, however, the effective date of this amendment falls after the reimbursement period over which this dispute has arisen, all references will be to the Medicare Act as it read prior to amendment
 
 
 [2]
 42 U.S.C. Sec. 1395h (1969)
 
 
 [3]
 In all fairness to the Secretary, Kingsbrook did receive some measure of satisfaction from these meetings. Initially, HEW had refused to permit Kingsbrook to utilize the revised method of cost determination for any period prior to January 1, 1969. HEW eventually modified this determination, however, authorizing reimbursement on a multiple unit calculation beginning January 1, 1968
 
 
 [4]
 In 1972, Congress amended the Medicare Act to establish a Provider Reimbursement Review Board to hear provider complaints concerning cost reimbursement determinations. 42 U.S.C. Sec. 1395oo (1972). Judicial review of Board decisions was also incorporated in section 1395oo. As indicated, supra note 1, this amendment did not become effective until after the period in question. Accordingly, appellees agree that Kingsbrook has exhausted its administrative remedies
 
 
 [5]
 Kingsbrook Jewish Medical Center v. Richardson, 355 F.Supp. 965, 971 (E.D.N.Y. 1973)
 
 
 [6]
 The Medicare Act expressly provides for judicial review of the Secretary's decision in two instances relevant to a provider of services: (1) the Secretary's decision that an agency or institution is not eligible to participate as a provider under the Act, 42 U.S.C. Sec. 1395ff(c); (2) the Secretary's decision to terminate an agreement with a provider, 42 U.S.C. Sec. 1395cc(b)(2)
 
 
 [7]
 42 U.S.C. Sec. 405(h) provides:
 The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or government agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 (28 U.S.C. Sec. 1331 et seq.) to recover on any claim arising under the subchapter.
 
 
 [8]
 While the Secretary may not have emphasized the last sentence of section 405(h) in Aquavella, the full text of the section is cited in his brief. Brief for Appellee at 11 n. 4, Aquavella v. Richardson, 437 F.2d 397 (2d Cir. 1971)
 
 
 [9]
 In its complaint, Kingsbrook also alleged that the APA represents an independent ground of jurisdiction. Because we consider 28 U.S.C. Sec. 1331 a proper jurisdictional basis, we need not resolve that question in this case. See Aquavella, supra, 437 F.2d at 400 n. 10
 
 
 [10]
 Kingsbrook, supra, 355 F.Supp. at 971
 
 
 [11]
 The Supreme Court has held that judicial review may be impliedly precluded only where the statute manifests such congressional intent by "clear and convincing evidence." Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), quoting from Rusk v. Cort, 369 U.S. 367, 380, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962), and citing L. Jaffe, Judicial Control of Administrative Action 336-359 (1965)
 
 
 [12]
 Aquavella, supra, 437 F.2d at 402 & n. 13
 
 
 [13]
 See note 6 supra
 
 
 [14]
 42 U.S.C. Sec. 1395oo (1972)
 
 
 [15]
 We are not convinced that Congress intended, by its 1972 amendment, to channel this particular dispute through the Provider Reimbursement Review Board. There is no real disagreement here over what method of cost determination is more accurate and, therefore, more "reasonable." See note 17 infra. Rather, controversy has arisen over the interpretation of the statutory command, in section 1395x(v)(1), concerning "retroactive corrective adjustments." While the former question may warrant expertise not possessed by a court, the latter is well within the traditional sphere of judicial competence. We need not resolve this uncertainty, however, since section 1395oo is not applicable to this case
 
 
 [16]
 To be sure, the Secretary does not admit that Kingsbrook is entitled, under the Medicare Act, to receive an additional reimbursement for the period July 1, 1966-December 31, 1967. At the same time, however, he cannot now deny his prior admissions that the single unit method of costs determination was inaccurate. See note 17 infra. Accordingly, we face only the purely legal issue of whether the Medicare Act requires a "retroactive corrective adjustment" when a previously accepted method of determining cost proves erroneous
 
 
 [17]
 If any confirmation of the import of Intermediary Letter No. 295 was necessary, it was provided by the admission of HEW, through the affidavit of Jerome T. Levy, Deputy Regional Attorney, Region II, New York, Department of Health, Education and Welfare, in support of appellees' cross-motion for summary judgment, that Intermediary Letter No. 295 was issued when "it . . . became evident that under some circumstances, requiring single unit treatment for certain facilities could result in inaccurate reimbursement to providers." (Emphasis added)
 
 
 [18]
 Regulation 20 C.F.R. Sec. 405.451(b) also mentions "retroactive adjustment," which it defines as:
 the difference between the amount received by the provider during the year for covered services from both title XVIII and the beneficiaries and the amount determined in accordance with an accepted method of cost apportionment to be the actual cost of services rendered to beneficiaries during the year. (Emphasis added)
 This definition, however, is inconsistent with the language of section 1395x(v)(1) which speaks of an adjustment required where an "accepted method of cost apportionment" or, in the words of the statute, "a method of determining cost" itself proves erroneous.
 
 
 [19]
 The regulations implementing these two sections follow this dichotomous statutory treatment. Compare 20 C.F.R. Secs. 405.451-405.453 with 20 C.F.R. Sec. 405.454; and 20 C.F.R. Sec. 405.405(b) with 20 C.F.R. Sec. 405.-405(a)
 
 
 [20]
 It should be noted as well that at no time does section 1395x(v)(1) speak of an audit as a "method of determining cost." Accordingly, it is apparent that Congress intended the phrase "method of determining cost" to refer to the formula for cost calculation and not to the mechanics of certifying the proper implementation of that formula
 
 
 [21]
 Where there are no material issues of fact in dispute, an appellate court reviewing the dismissal of a complaint can, upon reversal, also remand with directions to grant summary judgment on appellant's previously denied cross-motion. Under the circumstances present here "we perceive no reason for not bringing this litigation to an end." Stein v. Oshinsky, 348 F.2d 999, 1002 (2d Cir. 1965); 6 J. Moore, Federal Practice p 56.13, at 2251-52 (2d ed. 1972)