**HUMANA OF SOUTH CAROLINA, INC., Plaintiff,**

v.

**F. David MATHEWS, Defendant.**

**Civ. A. No. 75–0302.**

United States District Court, District of Columbia.

June 7, 1976.

John M. Bray, Washington, D. C., for plaintiff.

Joseph Guerrieri, Asst. U. S. Atty., Washington, D. C., for defendant.

## OPINION AND ORDER

BRYANT, District Judge.

This matter is now before the Court on defendant's Motion To Dismiss and both parties' cross-motions for summary judgment. For the reasons discussed below, the Court denies defendant's Motion To Dismiss and defendant's Motion For Summary Judgment, and grants plaintiff's Motion For Summary Judgment.

■ Plaintiff Humana, a "provider of services" [42 U.S.C. § 1395x(u)] under Title XVIII of the Medicare Act, has brought this action seeking declaratory and injunctive relief against the provisions of 20 C.F.R. § 405.429(a), the defendant's regulation establishing a specific formula for determining the appropriate rate of return on equity capital to be included as an element of the "reasonable cost" of services for which proprietary providers are to be reim-

bursed under 42 U.S.C. §§ 1395f(b) and 1395x(v)(1)(A). The government admits that a return on equity capital is a reimbursable cost of patient care for proprietary providers. Defendant's Answer, ¶ 8. Plaintiff challenges the regulation on three grounds, two of them substantive and one procedural. First, Humana contends, the regulation violates 42 U.S.C. §§ 1395f(b) and 1395x(v)(1)(A) and (B) in that it does not in fact reimburse proprietary hospitals their reasonable costs. Second, plaintiff argues that the regulation violates 42 U.S.C. § 1395x(v)(1)(A) in that it has the effect of forcing individuals not covered by Medicare to bear a portion of the cost of services provided by proprietary hospitals to individuals covered by Medicare. Humana's third (procedural) contention is that the regulation was promulgated without compliance with the rulemaking requirement of 5 U.S.C. § 553, the Administrative Procedure Act. The government defends the regulation on the merits, and also moves to dismiss for an alleged lack of subject matter jurisdiction and failure to exhaust administrative remedies.

## I. JURISDICTION AND EXHAUSTION

The government, relying principally on the Supreme Court's recent decision in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), contends that this Court lacks subject matter jurisdiction over this action, pursuant to 42 U.S.C. § 405(h), which provides:

Finality of Secretary's decision.

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to

recover on any claim arising under this subchapter.

Section 405(b) requires the Secretary to grant a hearing to any individual whose application for payment under the subchapter (i. e. the various Social Security benefits) has been acted upon adversely, upon the request of such individual (or the individual whose rights have allegedly been prejudiced by the original decision). Section 405(g) provides for limited judicial review of the decision made by the Secretary as the result of such hearings. Section 1395ii provides that section 405(h) applies to subchapter XVIII (Medicare) "to the same extent as [it is] applicable with respect to subchapter II of this chapter" (i. e. Social Security). Taken together, and as construed in *Salfi,* the government argues, these provisions deprive the Court of subject matter jurisdiction over this action.[1]

For several reasons, the defendant's arguments are without merit. First, the Court does not believe that § 405(h) is even applicable to the matters here at issue. As noted above, the only applicability that section has to the Medicare context is by virtue of the operation of § 1395ii, which applies it to the same extent that it would apply to any analogous situation in the Social Security (Title II) context. The question then is the extent to which provider reimbursement questions correspond to those Title II matters which are subject to § 405(h). A review of the statutory scheme involved makes clear that the question here at issue—the legality of the Secretary's regulation establishing the rate of return on equity capital for proprietary providers—does not correspond to any Title II determination that would be subject to the limitations of § 405(h).

Section 405(h) limits review of decisions arrived at after hearing by the Secretary. Those hearings are mandated by § 405(b) for the purpose of resolving a

---

1. Because the Court concludes that jurisdiction is proper under both 28 U.S.C. § 1331 and Section 10 of the APA, there is no need to consider whether jurisdiction may be found under the mandamus statute, 28 U.S.C. § 1361.

See *Mathews v. Eldridge,* 424 U.S. 319, at p. 332, 96 S.Ct. 893, at p. 901, 47 L.Ed.2d 18 n.12 (1976); *Ryan v. Shea,* 525 F.2d 268, 271 (C.A.10, 1975).

contested right to Social Security benefits on the part of a particular individual. The statutory scheme also provides for judicial review of the outcome of such hearings, through the procedure of § 405(g). The clear purpose of this scheme as a whole is to limit the number of dissatisfied applicants that would otherwise deluge the courts by providing an administrative appeal process followed by limited judicial review. The provision under which determination of individuals' eligibility for Medicare benefits is made in § 1395ff. As with § 405(b), the initial determinations are made *ex parte*. As with § 405(b), an individual dissatisfied with such decision is entitled to a hearing, and in fact is explicitly entitled to that hearing "to the same extent as is provided in section 405(b)". As with § 405(b), the results of that hearing are subject to limited judicial review, and that review is to be "as is provided in section 405(g)". Clearly, then, the determinations intended by § 1395ii to be subject to the *ex parte* decision-administrative appeal-limited judicial review scheme of sections 405(b), (g), and (h) are those found in § 1395ff, and the Court finds that there are no other such provisions in the Medicare Act. Cf. *St. Louis University v. Blue Cross Hospital Service*, 537 F.2d 283, at n. 5 and at 292 (C.A.8, 1976). The extent to which determinations affecting providers of services are subject to the limitations of § 405(h) is therefore determined by the scope of § 1395ff.

 Section 1395ff does subject certain decisions relative to providers to the § 405 scheme. In § 1395ff(c) the Medicare Act grants the right to a hearing to any institution or agency dissatisfied with a determination of the Secretary that it is not a provider of services or a decision of the Secretary to terminate an agreement with a provider pursuant to § 1395cc(b)(2). That right to a hearing exists "to the same extent as is provided in section 405(b)". There is, as in Title II, a right to limited judicial review of the outcome of that hearing, "as is provided in section 405(g)". These two issues are the only ones relating to providers of services committed by the Medicare Act to the statutory scheme of § 405, and therefore to the limitations of § 405(h). Cf. *Kingsbrook Jewish Medical Center v. Richardson*, 486 F.2d 663, 666 n. 6 (C.A.2, 1973); cf. *Aquavella v. Richardson*, 437 F.2d 397, 401 (C.A.2, 1971). Finally, that the Medicare Act did not commit all decisions regarding providers to the § 405 scheme is also clear from the presence of sections 1395h and 1395oo, which establish an entirely separate administrative and judicial review process for determinations regarding certain aspects of reimbursement. The Court therefore holds, in light of the statutory scheme as a whole, that § 405(h) neither applies to nor bars this suit.

 Even if it should be found that § 405(h) is in general applicable to this case, however, the Court would still have to determine whether its operation would deprive the Court of jurisdiction in the specific circumstances of this case. The question in such an inquiry would be whether or not the Medicare Act establishes some mechanism for the determination of the legality of the regulation at issue; it is of course now well established that "because of considerations of due process, *all* of the restraints on judicial action included in section 405(h) are inapplicable where the Medicare Act provides no procedure for judicial review." *Kingsbrook, supra* at 667 (emphasis in original); *Aquavella, supra* at 402. In such a case, "nonstatutory" judicial review is available under the grants of jurisdiction contained in 28 U.S.C. 1331 and the APA. *Kingsbrook, supra; Sanders v. Weinberger*, 522 F.2d 1167 (C.A.7, 1975); *Cappadora v. Celebrezze*, 356 F.2d 1 (C.A.2, 1966); *Pickus v. U. S. Board of Parole*, 507 F.2d 1107 (C.A.D.C., 1974). Of course, where the Medicare Act does establish procedures for review of an action of the Secretary, a court may not review that action by any other means. *Aquavella, supra* at 402.

 The Supreme Court's narrow decision in *Salfi* does not substantially affect the nonstatutory review cases discussed above. That holding simply expands the number of situations in which statutory review under 42 U.S.C. § 405(g) is available to

an individual seeking benefits under 42 U.S.C. § 405(b) (the Social Security Act) to include an application for benefits which challenges the constitutionality of a statutory limitation affecting that person's right to such benefits. That the Court in *Salfi* did not intend to preclude nonstatutory judicial review where the Act does not provide for a review mechanism is apparent from its discussion of the distinction between *Salfi* and *Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). In that discussion the Court indicates that it was *not* considering in *Salfi* a situation in which judicial review was wholly unavailable. It said, rather, that "the plain words of the third sentence of § 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims arising under the Act." *Id.* 422 U.S. at 762, 95 S.Ct. at 2465. If a statute contained no provision for judicial review of such challenges, and the statute were read to preclude such review, a "serious constitutional question of the validity of the statute as so construed" would be raised. *Id.* at 762, 95 S.Ct. at 2465. Such a restriction would be "extraordinary, such that 'clear and convincing' evidence would be required before we would ascribe such intent to Congress, 415 U.S., at 373 [94 S.Ct. 1160 at 1169]". *Id.* at 762, 95 S.Ct. at 2465. *Salfi* cannot be taken therefore to have addressed the question of the availability of "nonstatutory" judicial review of a provision whose legality could not be tested through any mechanism provided by the Medicare Act itself.[2] If therefore the Medicare Act does not provide such a mechanism, nonstatutory judicial review continues to be available.[3]

2. While the discussion in *Salfi* is directly addressed to review of the constitutionality of a statutory limitation, the problem presented by a preclusion of review of a regulation for compliance with the authorizing statute is obviously quite similar.

3. Despite the Supreme Court's silence in *Salfi* with regard to the question of nonstatutory review, which the government characterizes as merely an "oversight", the government maintains that *Salfi* overrules all the cases cited above in which nonstatutory review is found to be available to test certain actions of the Secretary. The government bases its argument on the following language in the *Salfi* opinion, at p. 757, 95 S.Ct. at p. 2463:

"That the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted. Moreover, if the third sentence is construed to be nothing more than a requirement of administrative exhaustion, it would be superfluous. This is because the first two sentences of § 405(h) . . . assure that administrative exhaustion will be required. Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)."

This language, however, does not preclude nonstatutory review; it is only actions *to recover on claims* that are barred by the section and *Salfi* from federal question jurisdiction. Since the availability of nonstatutory review in any given case is by definition predicated on the *lack* of any statutory review mechanism, a decision holding that federal question jurisdiction is precluded in what it construes to be an action to recover on a claim is obviously irrelevant to the question of nonstatutory review in an action which is not one seeking to recover on a claim. Moreover, plaintiff in the present case, unlike those in *Salfi*, does not even seek to recover on a claim; rather, it seeks ultimately to have the Secretary conduct a new rulemaking proceeding. Unlike *Salfi*, judgment for the plaintiff here would not direct the Secretary to make any payment, because (again unlike *Salfi*) there are here no criteria for the Court or the Secretary to use in determining whether or what payment is appropriate. Indeed, it is the purpose of the suit to establish such guidelines. And even after the new rulemaking, it might be that the Secretary would arrive at the same guideline as is now in effect, in which case plaintiff would be entitled to no additional payment at all. Finally, the Supreme Court itself has implied that *Salfi* did not address the question of nonstatutory review, cf. *Mathews v. Eldridge, supra* at n. 12, and the circuit courts that have analyzed the scope of *Salfi* have uniformly rejected the government's contention that nonstatutory review is no longer available, *Lejeune v. Mathews,* 526 F.2d 950 (C.A.5, 1976); *Sanders v. Weinberger,* 522 F.2d 1170 (C.A.7, 1975); *Wallace v. Weinberger,* 528 F.2d 700 (C.A.6, 1976); *Ryan v. Shea,* 525 F.2d 268 (C.A.10, 1975); but compare, *St. Louis University v. Blue Cross Hospital Service,* 3 CCH

As to fiscal periods ending prior to June 30, 1973, while the government does not contend that any provision was made in the Act for judicial review of the legality of the regulation, it does contend that plaintiff failed to exhaust the administrative remedy available to it, an appeal to its fiscal intermediary under the provisions of 20 C.F.R. § 405.490 *et seq.* (now 20 C.F.R. § 405.-1801–.1833).[4] However a review of the regulations involved clearly shows that a fiscal intermediary hearing is not a permissible forum for the presentation or resolution of plaintiff's challenge to the regulation involved. Under 20 C.F.R. § 405.406 and .453(f), a provider is required to submit a "cost report" to the intermediary. The regulations make clear that this is to be a strictly financial document, in which no opportunity exists for presentation of plaintiff's challenge. If the provider is dissatisfied with the intermediary's determination under § 405.1803 of the amount of reimbursement to which the provider is entitled, it can have a hearing to review any items claimed on the cost report which have been disallowed by the intermediary, § 405.1811. The issues considered at that hearing are strictly limited, and afford no opportunity for presentation of plaintiff's challenge. Under § 405.1829, the hearing officer in making his decision "must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as with rulings issued under the authority of the Commissioner of Social Security . . . .". This regulation clearly prohibits consideration of the validity of a regulation issued by the Secretary. Indeed, the intermediary has admitted as much in a letter to Humana with respect to this specific matter. "The Officers cannot entertain arguments directed to the constitutionality, legality, propriety or wisdom of any of the Laws, Regulations and General Instructions." Exhibit B to Plaintiff's Complaint. The Court therefore holds that the Act does not provide any mechanism for review of

plaintiff's challenge for the period prior to June 30, 1973, that no exhaustion is therefore required, and that 28 U.S.C. § 1331 and the Administrative Procedure Act grant the Court jurisdiction to entertain plaintiff's challenge as to that period.

Effective for fiscal periods ending on or after June 30, 1973, Congress has amended the Medicare Act to establish a Provider Reimbursement Review Board and for judicial review of that Board's decisions, § 1395*oo.* That section generally provides that a provider may obtain a hearing with respect to any cost report if it is dissatisfied with the final determination of its fiscal intermediary as to the amount of reimbursement due. Section 1395*oo* (f) provides for judicial review of the Board's decisions or of the Secretary's modifications of those decisions. The scope of the Board's hearing, however, is essentially the same as the fiscal intermediary's hearing: "The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the provider of services) even though such matters were not considered by the intermediary in making such final determination." § 1395*oo* (d). The narrow scope of the Board's review authority precludes consideration of plaintiff's challenge: "In exercising its authority to conduct the hearings . . . , the Board must comply with all the provisions of title XVIII of the Act and regulations issued thereunder . . . " 20 C.F.R. § 405.1867. And like the intermediary review officer, the Board may only consider matters "with respect to a cost report", whether or not the particular items on the report were considered by the intermediary in its review or determination, 20 C.F.R. § 405.1869. Clearly, then, the existence of the Board does not constitute a mechanism for review of plaintiff's challenge, it does not represent ad-

---

Medicare and Medicaid Guide ¶ 27,788 (C.A.8, April 12, 1976).

**4.** A provider is reimbursed either by the Secretary or by a private organization under con-

tract with the Secretary to perform that and certain other functions as a fiscal intermediary, § 1395h. Humana receives its reimbursements through such an intermediary.

ministrative remedy for exhaustion purposes, and its judicial review provisions do not affect this Court's jurisdiction to hear plaintiff's claim under 28 U.S.C. § 1331 or the Administrative Procedure Act.

## II. PROCEDURAL CONTENTIONS

 Plaintiff contends that the Secretary's regulation fixing the return-on-equity component of reasonable costs for purposes of reimbursement of proprietary providers of services, 20 C.F.R. § 405.429(a), is void because the Secretary failed to comply with the rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. § 553. The short answer to this contention is, as the defendant notes, that he was not required to comply with § 553 in the promulgation of the regulation in question.

Section 553(a) states:

"(a) This section applies, according to the provisions thereof, except to the extent that there is involved—

(1) * * *

(2) a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts."

This exemption is plainly applicable to the instant regulation. As Professor Bonfield notes,

"[t]he 'benefits' exclusion has a very broad scope and has been deemed to cover rulemaking relating to a great variety of programs. More specifically, this exemption applies to rulemaking relating to pension, medical care, and other similar services provided to veterans by the Veterans' Administration, and to all rulemaking relating to old age, survivors, disability, and health insurance payments made under the Social Security Act." (footnote omitted)

A. E. Bonfield, Public Participation In Federal Rulemaking Relating To Public Property, Loans, Grants, Benefits, Or Contracts, 118 U. of Pa.L.Rev. 540, 566 (1970). The conclusion seems inescapable that from the enactment of the Medicare Act until 1971 [when the Secretary waived the exclusions in § 553(a)(2) with respect to all future rulemaking, 36 Federal Register 2532, (February 5, 1971)], all regulations such as this one, directly relating to payments under the Medicare Act, were exempt from APA § 4 rulemaking requirements. See, *Opelika Nursing Home, Inc. v. Richardson,* 356 F.Supp. 1338, 1342 (M.D.Ala., 1973), aff'd, 490 F.2d 841 (C.A.5, 1974); *Rodriguez v. Swank,* 318 F.Supp. 289 (D.Ill., 1970), aff'd., 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971); *Rodway v. U.S. Dep't of Agriculture,* 514 F.2d 809 (C.A.D.C., 1975); cf. *Housing Authority v. U. S. Housing Authority,* 468 F.2d 1 (C.A.8, 1972), reh. den., 468 F.2d 1 (1972). Although it would have been highly desirable for the Secretary to follow the APA § 4 process in formulating regulations under the Social Security Act, the Court cannot say as a matter of law that he was bound to do so at the time the regulation at issue was promulgated.[5]

## III. THE SUBSTANTIVE CHALLENGES TO 20 C.F.R. § 405.429(a)

Plaintiff challenges the Secretary's regulation, which provides in relevant part:

(a) *Principle.* An allowance of a reasonable return on equity capital invested and used in the provision of patient care is allowable as an element of the reasonable cost of covered services furnished to ben-

---

5. The plaintiff argues that the "benefit" exclusion is applicable (if at all) only to benefits conferred by statute on Medicare subscribers, and not in connection with reimbursement of providers, pursuant to agreements with the Social Security Administration, for their cost of services rendered. Reply Statement Of Points And Authorities In Support Of Plaintiff's Motion For Summary Judgment And In Opposition To Defendant's Motion For Summary Judgment, p. 6. Plaintiff's argument proves too much. If benefits are conferred upon Medicare subscribers by the Act, a regulation establishing a reimbursement formula for payments to organizations in order that they actually deliver those benefits can only be viewed as "relating to" those benefits. Furthermore, that agreement with the Social Security Administration could also be regarded as a "contract", to which the regulation relates. In the view of the Court, there is no question that the instant regulation relates to either benefits, grants, or contracts, see *Bonfield, supra,* at 557.

eficiaries by proprietary providers. The amount allowable on an annual basis is determined by applying to the provider's equity capital a percentage equal to one and one-half times the average of the rates of interest on special issues of public debt obligations issued to the Federal Hospital Insurance Trust Fund for each of the months during the provider's reporting period or portion thereof covered under the program.

The regulation is authorized by 42 U.S.C. § 1395f(b), which calls for providers to be reimbursed the lesser of (A) the reasonable cost of the services involved, or (B) the customary charges with respect to such services, and by § 1395x(v)(1)(A) and (B), which provide in relevant part:

(v)(1)(A) The reasonable cost of any services shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services; * * * Such regulations shall (i) take into account both direct and indirect costs of providers of services (excluding therefrom any such costs, including standby costs, which are determined in accordance with regulations to be unnecessary in the efficient delivery of services covered by the insurance programs established under this subchapter) in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by the insurance programs established by the subchapter *will not be borne by individuals not so covered,* and the costs with respect to individuals not so covered will not be borne by such insurance programs, . . . (emphasis added)

(B) Such regulations in the case of extended care services furnished by proprietary facilities shall include provision for specific recognition of a reasonable return on equity capital, including neces-

sary working capital, invested in the facility and used in the furnishing of such services, in lieu of other allowances to the extent that they reflect similar items. The rate of return recognized pursuant to the preceding sentence for determining the reasonable cost of any services furnished in any fiscal period shall not exceed one and one-half times the average of the rates of interest, for each of the months any part of which is included in such fiscal period, on obligations issued for purchase by the Federal Hospital Insurance Trust Fund.

Plaintiff contends that the regulation does not in fact reimburse the reasonable cost of providing services, insofar as a return on equity capital is such a cost (which is conceded by the government), and that therefore higher rates must be charged of non-Medicare patients by proprietary hospitals, causing cross-subsidization in violation of § 1395x(v)(1)(A), above. The government argues that the level set by the regulation is reasonable and that subparagraph (B) forbids a higher rate of reimbursement for return on equity capital.

As originally enacted in 1965, the Medicare Act made no specific provision for payment of a reasonable return on equity to proprietary facilities. The Secretary therefore proposed (31 *Federal Register* 7863, 7871; June 2, 1966) that all providers of services, both profit and non-profit, be allowed two percent of total costs as compensation for otherwise uncompensable costs, including a return on equity. Apparently as a result of the dissatisfaction of proprietary facilities with this provision, Congress amended the Act to add subparagraph (B), calling for a return on equity for proprietary extended care facilities. P.L. 89–713 (November 2, 1966). The legislation is silent as to the treatment of proprietary hospitals, and the legislative history of the amendment provides only scant illumination, a single passage in the conference committee report stating:

The conferees expect that the Secretary of Health, Education, and Welfare will apply similar or comparable principles in

determining reasonable costs for reimbursement of proprietary hospitals for services furnished by them.

H.Rep. No. 2317, 89th Cong., 2d Sess. (1966), p. 3, U.S.Code Cong. & Admin.News 1966, p. 3676.

On the basis of the language of the statute and this brief legislative history, the Court concludes that the Congress did not intend to impose the "one and one-half times" limitation on the Secretary's determination of the level of return in equity capital necessary to prevent cross-subsidization in proprietary hospitals. Had Congress wished to place such a limit, it would not have explicitly confined the scope of subparagraph (B) to extended care facilities, while relegating mention of other proprietary facilities to the committee report. The Court further concludes that the requirement of subparagraph (A) that the Secretary's regulations "take into account" various direct and indirect costs of providers in order to prevent cross-subsidization, in light of the acknowledged need to provide a reasonable return on equity for proprietary facilities other than extended care facilities, coupled with the conference committee's expectation that the Secretary would "apply similar or comparable principles" in determining the level of return on equity necessary to prevent cross-subsidization, creates an obligation on the Secretary's part to make a determination of the *actual* level of return needed (whether by setting a specific rate or creating a flexible mechanism for setting the rate in a fluctuating capital market). In the view of the Court, such a determination inherently requires a detailed study of the various factors affecting the economics of the proprietary hospital industry, to enable the Secretary to make the determination outlined above.

The Secretary concedes that no such study or determination has been made [since in his view subparagraph (B) imposes the "one and one-half times" formula on all proprietary facilities]. Plaintiff, on the other hand, has made at least a prima facie showing that the rate resulting from the challenged regulation is in fact inadequate to prevent cross-subsidization in proprietary hospitals. Memorandum Of Points And Authorities In Support of Plaintiff's Motion For Summary Judgment And In Opposition To Defendant's Motion To Dismiss, Exhibits E and F, Affidavits of Robert R. Nathan and Paul A. Becker. Defendant does not seriously address the economic arguments made in those affidavits; in any case, sections 1395f and 1395x make clear the congressional intent that the Secretary ascertain in the first instance the proper level of return on equity capital for proprietary hospitals. And as a matter of institutional competence, the Secretary is certainly better equipped to make the initial determination than the Court. The Court will therefore remand the matter to the Secretary for appropriate economic study and rulemaking.[6] Finally, while the Court must set aside the regulation as not in accordance with the law, 5 U.S.C. § 706(2)(A), the Court will also stay the operative date of that action until such time as the Secretary's new regulation, whatever form it may take, becomes effective. The delay is appropriate for two reasons: first, the Court has not held that the current level of return on equity *is* inadequate, but rather that the Secretary has not made any formal determination that it is adequate; second, given the nature of that holding, it would not be desirable to introduce the greater degree of uncertainty (that would result from the absence of any operative regulation for reimbursement of the cost connected with return on equity) into the interim operations of the Medicare reimbursement program. The Court expects, of course, that the Secretary will proceed with all deliberate speed in this matter.[7] Accord-

---

6. Because of the Court's disposition of plaintiff's substantive challenge, the Court need not reach plaintiff's constitutional argument.

7. Plaintiff has asked that the Court order the Secretary to compensate it retroactively. If the Secretary should determine that the current rate is inadequate, plaintiff's remedy for past inadequate aggregate payments lies in resort to the "retroactive corrective adjustment" procedures required by § 1395x(v)(1)(A)(ii). See, *Kingsbrook, supra* at 669–670.

ingly, it is by the Court this 2nd day of June, 1976,

ORDERED:

1) That defendant's Motion To Dismiss be, and hereby is denied;

2) That defendant's Motion For Summary Judgment be, and hereby is, denied;

3) That plaintiff's Motion For Summary Judgment be, and hereby is, granted;

4) That the Secretary's regulation, 20 C.F.R. § 405.429(a) be, and hereby is, set aside as not in accordance with law;

5) That the Secretary promptly commence study and rulemaking proceedings consistent with this opinion;

6) That paragraph 4 of this order be, and hereby is, stayed; and

7) That the stay described in paragraph 6 of this order shall expire upon final promulgation and effectiveness of the Secretary's new regulation replacing the regulation described in paragraph 4 of this order.